UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| GREGORY R. WINNINGHAM | : | Case No. 3:11-cv-415 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS REVERSED; (2) THIS
MATTER IS REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF
42 U.S.C. §405(g); AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and

therefore unentitled to disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI").  (*See* Administrative Transcript ("Tr.") (Tr. 14-27)).

## I.

Plaintiff applied for SSI and DIB benefits, alleging that he had been disabled since

December 23, 2007, due to symptoms and the pain associated with lumbar degenerative

disc disease, heel spurs, foot pain, left hip arthralgias,[1] systolic hypertension,[2] morbid

obesity, depression, diabetes, and vision difficulties.  Plaintiff's application was denied,

---

[1] Antrhalgias is severe pain in a joint.

[2] Systolic Hypertension indicates elevated blood pressure.

1

and he requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 10).  On

March 23, 2011, Plaintiff appeared before an ALJ and offered testimony.  A vocational

expert also testified.  (Tr. 33-58).  On May 27, 2011, the ALJ determined that Plaintiff

was not disabled as defined by the Social Security Act.  (Tr. 14-27).  Specifically, the

ALJ determined that Plaintiff had the residual functional capacity[3] ("RFC") to perform a

reduced range of light work.[4]  The Appeals Council twice declined to review the ALJ's

determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-10).

Plaintiff initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of

the ALJ's decision.

Plaintiff was 49 years of age at the time of the alleged disability onset date.  (Tr.

25).  He completed the tenth grade and has a work history dating back to 1983 over which

time he worked primarily as a die cutter and printing press operator.  (Tr. 228).

The ALJ's "Findings", which represent the rationale of her decision were as

follows:

1.      The claimant meets the insured status requirements of the Social Security
        Act through December of 31, 2012.

2.      The claimant has not engaged in substantial gainful activity since December
        23, 2007.  (CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[3] Residual Functional Capacity is defined as the most a claimant can still do despite one's
physical or mental limitations.  20 CFR 404.1545.

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds" and can apply to employment that "requires a good deal of
walking or standing or when it involves sitting most of the time with some pushing and pulling
of arm or leg controls."  20 CFR 404.1567(b).

3.  The clamant has the following severe impairments: foot pain, heel spurs, obesity, and lumbar degenerative disc disease.  (20 CFR 404.1520(c) and 416 .920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 04, Subpart P, Appendix 1 (20 CFR 4040.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can only occasionally stoop or crouch, and he must be free to alternate positions between sitting or standing at 30-minute intervals throughout the workday.

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 22, 1958 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 4040.1568, 404.1569(a), and 416.969).

11. The claimant has not been under a disability, as defined in the Social Security Act from December 23, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

3

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security regulations and was therefore not entitled to DIB or SSI.  (Tr. 27).

On appeal, Plaintiff argues that the ALJ erred when she: (1) failed to accord controlling weight to Plaintiff's treating physician's opinion while assessing Plaintiff's RFC; (2) failed to property evaluate Plaintiff's credibility; and (3) relied upon flawed vocational expert testimony.  The Court agrees.

## II.

Judicial review of the denial of a social security disability claim is limited to determining (1) whether the ALJ applied the correct legal standard in reaching her decision, and (2) whether substantial evidence supports the findings.  42 U.S.C. § 405(g); *see also Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

4

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

However, "even if supported by substantial evidence a decision of the Commission will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006). *See also Advent v. Astrue*, No. 1:11 cv2130, 2012 U.S. Dist. LEXIS 105511, at *15-16 (N.D. Ohio July 30, 2012) ("Failure … to apply the correct legal standards … or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right.").

### A.

The record reflects that:

**1.  Medical evidence of record**

    **a.  Treating source diagnosis and opinions**

On June 26, 2008, Plaintiff was diagnosed with plantar fasciitis[5] after presenting himself to the emergency room due to pain in his feet.  (Tr. 282).  On August 21, 2008, Plaintiff was examined by Dr. Tanisha Richmond, DPM.  The examination revealed pain with palpation of the left heel and pain with range of motion in the left ankle.  The doctor prescribed Celebrex[6] and Metanx[7] and diagnosed Plaintiff with bilateral heel spurs and fracture of the right fifth toe. (*Id.*)  Dr. Richmond completed a medical assessment form for the Ohio Department of Job and Family Services on August 21, 2008.  (Tr. 292-293).  Dr. Richmond diagnosed spinal neuropathy, reflex sympathetic dystrophy ("RSD"), non-displaced fracture of the right 5th metatarsal, pain with range of motion in the left ankle and over the top of the left heel, and numbness/tingling.  (Tr. 292).  It was noted that his symptoms began many years previously, but his condition was deteriorating.  *(Id.)*

Dr. Richmond opined Plaintiff was able to stand/walk 4 hours total (1 hour at a time) and sit 4 hours total (2 hour at a time) in an 8-hour workday.  (Tr. 293).  He was

---

[5] Plantar fasciitis is painful inflammation of the thick tissue on the bottom of the foot.

[6] Celebrex is indicated for the treatment of arthritis and acute pain.

[7] Metanx is indicated for the treatment of diabetic neuropathy.

limited to lift/carry no more than 5 pounds.  (*Id.*)  Richmond found that Plaintiff had

marked limitations in his ability to push/pull, bend, and perform repetitive foot

movements.  He was moderately limited in reaching and handling.  Dr. Richmond opined

that Plaintiff was expected to be disabled for at least 12 months.  (*Id.*)

On September 23, 2008, Plaintiff reported continued sharp pain in his heel.  (Tr.

295).  An examination revealed unchanged findings.  Dr. Richmond confirmed the plantar

fasciitis diagnosis of June 26, 2008, and diagnosed peripheral neuropathy.  (*Id.*)  Plaintiff

stated that he could not afford treatment with orthotics or injections.  Dr. Richmond

referred Plaintiff for pain management.  *(Id.)*

On April 27, 2009, Plaintiff reported heel pain and thigh numbness.  (Tr. 356).

Plaintiff reported difficulties with sitting and standing due to his pain.  Dr. Richmond's

examination was notable for pain on palpation of the left heel and a nodule noted on the

right heel.  (*Id.*)  Plaintiff stated that he had been unable to get pain management or any

other treatment due to a lack of insurance.  (Tr. 331).  X-rays revealed bilateral heel spurs.

(*Id.*)  Dr. Richmond completed another medical assessment for the Ohio Department of

Job and Family Services on the same day.  (Tr. 332-333).  Dr. Richmond reported that

MRI and x-ray findings supported the diagnoses.  (Tr. 332).  The doctor opined that

Plaintiff remained limited in sitting, standing, and walking.  (Tr. 333).  Plaintiff was also

found to be extremely limited in bending, reaching, handling, and repetitive foot

movements.  (*Id.*)  Dr. Richmond completed an "Ability to Work" form three days later, wherein he specified Plaintiff could sit up to 2 hours total and stand/walk up to 2 hours total in an 8-hour workday.  (Tr. 334).  He was limited to sit and stand for one half-hour at a time due to his back pain, neuropathy, and plantar fasciitis.  (*Id.*)  On May 29, 2009, Plaintiff complained of continued numbness and tingling, as well as heel pain shooting down his feet.  (Tr. 349).  He was given samples of Lyrica.[8]  (*Id.*)

Dr. Richmond completed a Lower Extremities Impairment Questionnaire dated June 22, 2009.  (Tr. 336-343).  She diagnosed plantar fasciitis on the left and radiating pain due to neuropathy in the lower extremities.  (Tr. 336).  Clinical findings included limited range of motion in the left foot, tenderness of the left heel, and an abnormal gait.  (Tr. 336-337).  Dr. Richmond noted that diagnostic x-rays indicated heel spurs.  (Tr. 337).  Plaintiff's primary symptoms were radiating pain from the lower back to the extremities and heel pain on the left.  (Tr. 338).  It was noted that Plaintiff could independently initiate ambulation, but not sustain ambulation or complete activities.  (*Id.*)

Dr. Richmond opined that Plaintiff was able to sit less than 1 hour total and stand/walk less than 1 hour total in an 8-hour workday.  (Tr. 339).  He could occasionally lift and carry up to 5 pounds, but never more.  (Tr. 340).  Dr. Richmond assessed that Plaintiff 's pain or other symptoms were frequently severe enough to interfere with his attention and concentration.  (Tr. 341).  The doctor stated that Plaintiff required 15 minute

---

[8] Lyrica is indicated for the treatment of peripheral neuropathy.

breaks to rest hourly during an 8-hour day.  (Tr. 341-342).  Dr. Richmond estimated that Plaintiff would be absent from work, on average, more than three times a month.  (Tr. 342).  It was noted that the symptoms and limitations described in the questionnaire had been present since August 2008.  (*Id.*)

On July 1, 2009, Plaintiff complained of pain in both heels and his big toes.  (Tr. 347).  At the next visit, on July 30, 2009, Plaintiff  reported unchanged symptoms.  (Tr. 350).  He was given Lyrica again.  (Tr. 352).  On September 30, 2009, Plaintiff complained of ongoing pain in both feet.  (Tr. 411).  His Lyrica prescription was renewed.  *(Id.)*  On November 12, 2009, Plaintiff reported disturbed sleep due to pain in his feet and back.  (Tr. 360).  Plaintiff returned to Dr. Richmond on May 11, 2010 with complaints of pain in both feet up to his ankles.  (Tr. 403).  The doctor gave him samples of Celebrex.  (Tr. 404).  On July 1, 2010, Plaintiff reported shooting pain from his heels to his toes.  (Tr. 408).

Dr. Richmond completed a narrative regarding Plaintiff on January 24, 2011.  (Tr. 477).  The doctor noted that Plaintiff was treated for plantar fasciitis and lower extremity radiculopathy/neuropathy.  Dr. Richmond maintained that Plaintiff was incapable of working.  *(Id.)*

**b.  Other medical diagnoses and opinions.**

Obiora Okafor, M.D., evaluated Plaintiff at the hospital clinic on September 18,

2009. (Tr. 362). Plaintiff had hypertension and hyperglycemia with high blood sugar level despite taking Metformin.[9] (Tr. 362-363).

Mohammed Abdelaziz, M.D., began treating Plaintiff on October 5, 2009. (Tr. 371). Plaintiff complained of feeling "sluggish" and reported chronic back pain. (Tr. 372). He was diagnosed with diabetes mellitus and hypertension. (Tr. 374). On January 25, 2010, Plaintiff reported ongoing low back pain. (Tr. 377). An examination revealed low back pain with palpation and positive straight leg raising test. (Tr. 378). X-rays of the lumbar spine dated March 2, 2010 showed mild to moderate multilevel degenerative changes. (Tr. 382).

On May 10, 2010, Plaintiff reported no change in his low back pain. (Tr. 384). Dr. Abdelaziz's opinion remained the same. (Tr. 386). On May 24, 2010, Dr. Abdelaziz completed a Multiple Impairment Questionnaire. (Tr. 393-400). Clinical evidence included tenderness on palpation of the back. *(Id.)* Dr. Abdelaziz also cited lumbar spine x-rays showing degenerative changes that supported his findings. (Tr. 394). Plaintiff's primary symptoms were back pain and left leg pain extending to the left foot and toes. *(Id.)* His pain and fatigue were rated as severe, 9 on a 10-point scale. (Tr. 395).

Dr. Abdelaziz also opined Plaintiff was able to sit less than 1 hour total and stand/walk less than 1 hour total in an 8-hour workday. (Tr. 395). He also needed to get

---

[9] Metformin is indicated as an adjunct to diet and exercise to improve glycemic control in patients with type II diabetes mellitus.

10

up and move around every 30 minutes when sitting. *(Id.)* Plaintiff could occasionally

lift and carry up to 5 pounds, but never more. (Tr. 396). He had significant limitations

performing repetitive reaching, handling, fingering, and lifting due to sharp pains in his

back. *(Id.)* Dr. Abdelaziz opined that Plaintiff had significant limitations using the upper

extremities for grasping, turning, and twisting objects, and reaching. (Tr. 396-397). The

doctor assessed that Plaintiff's pain, fatigue, or other symptoms were frequently severe

enough to interfere with his attention and concentration. (Tr. 397). He required breaks to

rest every 15 to 20 minutes during an 8-hour workday. (Tr. 398).

On October 11, 2010, Plaintiff reported continuing lower back pain. (Tr. 455).

He was prescribed Diclofenac.[10] (Tr. 456). On December 20, 2010, Plaintiff reported

having troubles sleeping due to back and leg pain. (Tr. 448). An examination revealed

back tenderness. (Tr. 451). An MRI of the lumbar spine dated January 10, 2011 revealed

diffuse disc bulging at L2-3 that was effacing the thecal sac[11] with mild to moderate

central stenosis, a bulging disc at L3-4 with mild to moderate central stenosis and mild to

moderate right-sided foraminal narrowing, a plate spur at L4-5 with little thecal sac

effacement and possible narrowing of the neural foramen, and a broad-based L5-S1 left

paracentral disc protrusion effacing the thecal sac and narrowing the left central canal and

lateral recess with moderate stenosis of the left neural foramen. (Tr. 497-498). On April

---

[10] Diclofenac is indicated for the signs and symptoms of osteoarthritis.

[11] Thesal sac is the name for the space surrounded by the sheath covering the vertebral nerves.

11

4, 2011, Plaintiff reported feeling very depressed and not being able to get up to do anything. (Tr. 478). He also reported ongoing back pain. (Tr. 479).

On December 23, 2008, Dr. Danopulos evaluated Plaintiff at the request of the Social Security Administration. (Tr. 310). Plaintiff stated that he was unable to work as a result of high blood pressure, left hip pain, bilateral feet pain, low back pain, and obesity. *(Id.)* On examination, Dr. Danopulos noted painful motion in the left knee, pain with palpation of the left heel and the plantar side of the heel, pain with motion in both ankles, and restricted and painful extension in the lumbar spine. (Tr. 312-313). X-rays revealed generative changes at L2-3 and L5-S1. (Tr. 313). Dr. Danopulos diagnosed systolic hypertension, left hip arthralgias, bilateral feet neuralgias, lumbar spine arthritic changes, and morbid obesity. (Tr. 314). The doctor opined that Plaintiff's work activities were affected "in a negative way" from the combination of his morbid obesity with hypertension and lumbosacral spine arthritic changes. *(Id.)*

Dr. William Bolz of the Bureau of Disability Determination opined that the Plaintiff could perform the exertional requirements consistent with light work, except that he needed to periodically alternate between sitting and standing to relieve pain or discomfort. Dr. Bolz assessed Plaintiff's claim to not be as severe as initially stated. (Tr. 302). In support of his opinion, Dr. Bolz offered that "[b]ilateral foot x-rays are normal

12

except for bilateral calcaneal spurs."[12]  *(Id.)*  Dr. Bolz also found the severity of the

symptoms and its alleged effect on function to be attributable to a medically determinable

impairment because "[Plaintiff's] reported symptoms are relatively consistent with his

MDI's and the MER."  (Tr. 306).

### c. Plaintiff's Testimony

Plaintiff reported numbness and tingling in both his feet.  (Tr. 40).  He stated that it

hurts even to put shoes on.  *(Id.)*  He also has pain in his back, legs, and knees, most severe

in his back.  (Tr. 44).  He estimated that he can walk about half-a-block before he has to sit

down and rest.  *(Id.)*  He can stand for 15 to 20 minutes.  (Tr. 45).  Plaintiff reported that

he can lift no more than 5 pounds.  *(Id.)*  He usually takes two naps during the day for 45

minutes to 1 hour because of fatigue.  (Tr. 48-49).  Plaintiff lives alone, but his brother

stays with him two to three days a week to help him.  (Tr. 38).  He only drives short

distances, about a mile-and-a-half, to the store or to go out to dinner.  (Tr. 39).  He stated

that he tries to straighten up the house, but his brother does the vacuuming and all of his

laundry.  (Tr. 46).  Plaintiff only cooks with the microwave or makes himself a sandwich.

In a typical day, Plaintiff wakes up and lies in bed for two to three hours before he gets up.

*(Id.)*  When he gets up, Plaintiff sits and watches TV for a bit, but cannot sit long to enjoy

anything before he has to get up and move around.  (Tr. 46-47).

---

[12] Calcaneal spurs cause localized tenderness and pain that is made worse by stepping down on the heel.

### d.   Vocational Expert Testimony

The Vocational Expert ("VE") testified that an individual of Plaintiff's age, education, and work history, who was limited to unskilled, light work with occasional stooping and crouching, and who needs to alternate sitting and standing every 30 minutes, could work as a machine tender, warehouse checker, mail clerk, and copy machine operator.  (Tr. 55).  The VE stated that an individual who was off task for 20 to 25% of the workday due to his symptoms would be unable to perform these jobs.  (Tr. 56).  The VE also reported that an individual who missed work three times a month could not perform the jobs identified.  (*Id.*)

### B.

First, Plaintiff maintains that the ALJ erred when she failed to accord controlling weight to his treating physicians opinion while assessing his RFC.  It is well settled that an ALJ is required "to generally give greater deference to the opinions of treating physicians because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the [claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  It is also true that "[t]he determination of disability is [ultimately] the

14

prerogative of the ALJ, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). However, when an ALJ declines to give controlling weight to the opinions of a treating physician, she must evaluate the treating physician's opinion using the factors set out in 20 C.F.R. § 404.1527(d)(2).[13] *See also Wilson v. Comm'r of Soc. Sec's.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, the ALJ is required to *balance* these factors to determine what weight to give the opinion. *Cole v. Astrue*, 652 F.3d 653, 659 (6th Cir. 2011) (emphasis added). "A failure to follow the procedural requirement of identifying the reasons for discounting [a treating physician's] opinions and for explaining precisely how those reasons affected the weight accorded the opinions *denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added).

1.      **The ALJ improperly determined that Dr. Abdelaziz was not Plaintiff's treating physician**

The ALJ concluded that Dr. Abdelaziz could not be regarded as a treating source, "as defined in 20 CFR 416.902," because he examined Plaintiff on only two occasions prior to offering his opinion. (Tr. 25). First, 20 CFR 416.902 does not define the term treating source. Rather, 20 C.F.R. §416.1502 states that a treating source is a physician

---

[13]  For example: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) specialization of the treating source. *Id.*

with whom the claimant has an "ongoing treatment relationship." *Id.* An ongoing treatment relationship exists when the frequency of visits to the physician is consistent with accepted medical practices for the type of treatment *or evaluation* required for the medical condition. *Id.* The regulations do not prescribe the number of visits needed to constitute an ongoing treatment relationship.

Here, the ALJ fails to offer an explanation as to why two visits are insufficient to evaluate Plaintiff's medical condition. Nor does she provide any insight as to how many visits would have been sufficient to create an ongoing treatment relationship. Curiously, the ALJ recognized Dr. Richmond as a treating source despite the fact that her opinion was given "[a]fter examining [Plaintiff] only on one occasion." (Tr. 24) Equally as curious is the ALJ reliance Dr. Bolz's opinion, which was given after only one visit with Plaintiff.

Essentially, the ALJ justifies her decision on the grounds that Dr. Abdelaziz's opinion is "not supported by the objective signs and findings." (Tr. 25) However, determining whether a physician is a treating source does not require a comparison of the opinion with the medical record; it requires only an evaluation of the nature of the treatment relationship. 20 C.F.R. § 416.1502. In sum, the ALJ failed to apply the proper legal standard and failed to provide any evidence disputing the nature of the ongoing treatment relationship between Plaintiff and Dr. Abdelaziz. As such, the ALJ's decision is not supported by substantial evidence.

**2.    The ALJ erred in declining to accord controlling weight to Dr. Richmond's opinion**

It is settled that the procedures followed when making a determination of what weight to accord the opinion of a treating physician safeguard a "substantial right." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004); *see also* 20 C.F.R. §404.1527(d)(2).  A failure to comply with these regulations "denotes a lack of substantial evidence," which in turn warrants a reversal.  *Rogers*, 486 F.3d at 243; *see also* 42 U.S.C. 405(g).

Here, the ALJ concluded that Dr. Richmond's evaluations were "unsupported by objective signs and findings."  (Tr. 25).   From this conclusion, she reasoned "that Dr. Richmond [must have] relied quite heavily on the subjective report of symptoms and limitations provided by the claimant …. [despite] the good reasons [that] existed for questioning the reliability of the claimant's subjective complaints."  *Id.*  The same reasoning supports the ALJ's decision to disregard Dr. Abdelaziz's opinion.  *Id.*  However, the ALJ does not sufficiently consider the factors of 20 C.F.R. §404.1527(d)(2), and she makes no attempt to evaluate what weight should be given to the treating physicians' opinions.  *Compare Cole*, 652 F.3d at 659.

For example, the ALJ makes no mention of the length of the treatment relationship with Dr. Richmond, nor does she refer to the frequency of the examinations when evaluating what weight to give them.  Notwithstanding Dr. Richmond's expertise as a

17

podiatrist, the ALJ fails to accord any weight to the portion of her opinions that deal with Plaintiff's foot impairments. Notably, the ALJ gives little consideration to the consistency between the opinions of Dr. Addelaziz and Dr. Richmond, Plaintiff's treating physicians.

Instead of balancing the factors of 20 C.F.R. § 404.1527(d), the ALJ focused her evaluation on what she felt was the absence of signs and findings of neuropathy. In this regard, the ALJ gives "significant weight" to the opinions of Dr. William Bolz, a reviewing physician from the Bureau of Disability Determination. (Tr. 23). However, reliance on the findings of an adverse medical opinion is not equivalent to a balanced analysis of the factors set forth in the regulations. The ALJ's procedural lapses significantly undermine her reasoning that Dr. Richmond's opinions should be discarded as inconsistent with the medical evidence. On the contrary, the ALJ's selective review of the medical evidence indicates that she made a determination based on her unsubstantiated opinion about Plaintiff's credibility rather than proper legal standards.

Even if the decision had been reached applying the proper legal standards, the ALJ's failure to recognize the evidence of neuropathy indicates that her reading of the medical record is inadequate to withstand even the most deferential judicial review. As Plaintiff points out, neuropathy is not a single disease but rather "a symptom with many potential causes."[14] Thus, medical documentation of painful symptoms that are consistent

---

[14] Plaintiff points out that neuropathy and radiculopathy are terms used to describe painful symptoms rather than an underlying disease.

with a diagnosis of neuropathy constitute objective medical evidence of neuropathy. Moreover, there is no evidence or medical opinions that disprove the diagnosis of neuropathy such that Dr. Richmond's opinions should be considered inconsistent with the medical record. Where "there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors." *Grecol v. Halter*, No. 01-3407, 2002 U.S. App. LEXIS 18156, at *13 (6th Cir. Aug. 29, 2002).

Here, the ALJ relied on the absence of medical evidence to arrive at her conclusion that Dr. Richmond's neuropathy diagnosis was inconsistent with the objective medical evidence. For example, the ALJ deemed that Plaintiff's mild to moderate degenerative disc disease was not consistent with neuropathy in the absence of spinal cord compression. (Tr. 25). She also noted that relatively normal examinations indicate an inconsistency, because there was an absence of any mention of neuropathy. *Id.* However, the record indicates that Plaintiff consistently complained of pain in his extremities, his lower back, his joints, and his feet.[15] Dr. Richmond twice opined that Plaintiff's chronic pain emanated from his neuropathy. Moreover, both Drs. Richmond and Abdelaziz prescribed medication to treat his painful symptoms.[16] Thus, the record is replete with objective medical evidence of

_____

[15] *See, e.g.,* Tr. 282; 295; 312-313; 338; 347; 349; 356; 395; 448; 455.

[16] *See, e.g.*, Tr. 282; 349; 356; 404; 456.

neuropathy.

In addition, the ALJ failed to consider the evidence of Plaintiff's painful symptoms. The ALJ rejected Plaintiff's claims of disabling pain as not credible and inconsistent with the medical evidence, even before declining to accord controlling weight to Dr. Richmond's opinions, and before making her RFC determination. (Tr. 20). However, there were no countervailing opinions or evidence disproving the neuropathy diagnosis. In fact, there is no evidence whatsoever to show that Dr. Richmond's evidence was diagnostically incorrect. *Cf Mattingly v. Sec'y of Health & Human Servs.*, No 90-5900, 1991 U.S. App. LEXIS 11479, at *5 (6th Cir. May 24, 1991). On the contrary, the consultative physicians noted that Plaintiff's symptoms were consistent with his underlying medical conditions.[17] Moreover, neuropathy describes a combination of symptoms rather than a cause, so the consultative doctors' opinions are not inconsistent with those of Dr. Richmond.[18]

---

[17] Dr. Abdelziz stated that Plaintiff's symptoms and functional limitations were "reasonably consistent with the patient's physical and/or emotional impairments..." (Tr. 394); Dr. Bolz stated that "[Plaintiff's] reported symptoms are relatively consistent with his MDI's and the MER," (Tr. 306) and that the severity of the symptoms and their alleged effect on function was attributable to a medically determinable impairment. (Tr. 321; 325).

[18] This Court does not entirely accept Plaintiff's argument that the non-examining physician's report was conclusory. For instance, Dr. Danopulos had a chance to examine Plaintiff in a more meaningful manner than the consultative physician in *Johnson v. Comm'r of Soc. Sec.*, the authority upon which Plaintiff relies. 652 F.3d 646, 650-651 (6th Cir. 2011). Yet, when viewed in light of the significant evidence of chronic pain documented in the record, the prescription to treat that pain, and the opinions of two treating sources, Dr. Danopulos's opinion can only be regarded as insufficient to support a finding that neuropathy had not been documented in the record.

Essentially, the ALJ impermissibly substituted her opinion for that of the treating physician. *See Kane v. Sec'y of Health & Human Servs.*, No. No. 83-1574, 1984 U.S. App. LEXIS 14133, at *26 (6th Cir. July 13, 1984). Moreover, there is significant evidence that Plaintiff did not suffer from neuropathy. *Id.*

### C.

Next, Plaintiff argues that the ALJ failed to properly evaluate his credibility. An ALJ must undertake "a two-part analysis" to evaluate Plaintiff's complaints of disabling pain." 20 C.F.R. § 1529(b) and (c); 20 C.F.R. § 416.929 (b) and (c); *see also Buxton v. Halter*, 246 F.3d 702, 773 (6th Cir. 2001). The ALJ first evaluates whether there is objective medical evidence of an underlying medical condition. If so, the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Essentially, the ALJ is charged with evaluating "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities" in light of the objective medical evidence in the record. *Rogers*, 486 F.3d at 247.

As for the objective medical evidence, the ALJ found that the "claimant's medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms" without giving any clues as to which symptoms she was referring. (Tr.

20) (emphasis added).  Indeed, the ALJ found that Plaintiff has foot pain, heel spurs, obesity, and lumbar degenerative disc disease, all of which "significantly interfere with Plaintiffs ability to engage in basic work related activities."  (Tr. 16).  However, the ALJ did not find that Plaintiff's impairments confirmed the severity of the alleged pain.  Nor did she find that the impairments were of such severity that they could reasonably be expected to produce the alleged disabling pain.  Instead, the ALJ concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they are inconsistent with the *the above residual functional capacity assessment*."  (Tr. 20) (emphasis added).

"Credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet, v. Sec. of Health & Human Servcs.*, 823 F.2d 918, 920 (6th Cir. 1987). However, where there is no objective medical evidence of disabling pain and a plaintiff is found not to be credible, the ALJ can reject Plaintiff's testimony. *Id.* Notably, the credibility determination "does not require objective evidence of the pain." *Felisky*, 35 F.3d at 1039 (6th Cir. 1994) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)).  The adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the "entire case record." *Rogers*, 486 F.3d at 247-248.  The ALJ must consider the factors enumerated in 20 C.F.R. 416.929(a).[19]  Moreover,

---

[19] 20 C.F.R. 416.929(a) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.").

a credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 SSR LEXIS 4, at *11 (July 2, 1996). Thus, even if the objective medical evidence did not support Plaintiff's claims of disabling pain, the ALJ had a duty to review the entire record when making her credibility determination.

Here, the ALJ's decision indicates that she made her credibility determination based on inconsistencies between Plaintiff's testimony and her own RFC determination, rather than the record as a whole. Specifically, the ALJ determined that Plaintiff's alleged symptoms are more severe than what is evident in: (1) the pathology shown on foot and spinal studies; (2) the objective findings of both the treating and examining physicians; and (3) the claimant's description of daily activities. (Tr. 20). However, the ALJ's reasoning demonstrates that each of theses findings had been predetermined in her RFC assessment and thus arrived at without consideration of the entire record.

As to the pathology record, the ALJ remarked that other than the bilateral calcaneal spurs, the x-rays of the Plaintiff's feet are "normal". (Tr. 20-21). However, the ALJ failed to consider the plantar fasciitis diagnosis and whether Plaintiff's allegations of persistent pain were consistent with the combination of these impairments. Moreover, the ALJ failed to consider three medical opinions which unequivocally stated that Plaintiff's chronic pain

was consistent with his physical impairments.

Next, the ALJ cites Plaintiff's "history of noncompliance" with treatment and Plaintiff's daily activities in support of her adverse credibility determination. (Tr. 22-23). While the ALJ did consider Plaintiff's access to affordable health care before making her conclusion, it is clear that she impermissibly drew inferences about Plaintiff's symptoms despite his explanations.[20] For instance, the record indicates that Plaintiff's non compliance with his course of treatment first became an issue when he began having extreme financial difficulties.[21] Additionally, Plaintiff became depressed when his mother died which made compliance with the course of treatment a challenge.[22] The ALJ also failed to consider Plaintiff's testimony about his aversion to pain medication.[23] It should be noted that both Dr. Richmond and Dr. Abdelaziz remarked that Plaintiff was not a "malingerer". (Tr. 341, Tr. 395). Dr. Danopulos also attested to Plaintiff having relayed "a reliable history" of his illness. (Tr. 310). Even Dr. Bolz opined that "[Plaintiff's] reported symptoms are

---

[20] SSR 96-7p ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects . . . without first considering any explanations that the individual may provide.").

[21] Plaintiff was depressed and had to sell his car. (Tr. 377-378).

[22] Doctor Abdelaziz noted that Plaintiff was not taking medications because of feeling sad after his mother died and because he could not afford the medication. (Tr. 385).

[23] "I did want to go through with [the pain management program] because I seen my mom go through that. They had her on 300 Vicodin a month. . . . She was so addicted to them and it tore her insides up, so I didn't want to go down that road." (Tr. 52 ).

relatively consistent with his MDI's and the MER."  (Tr. 306, 321, 325).

    With respect to Plaintiff's daily activities, the ALJ claims that he testified that he could clean the house, shop for food six days per week, prepare meals, and drive short distances on a daily basis.  (Tr. 23).  In actuality, Plaintiff testified to abject living conditions, that he tried to care of his elderly mother  (Tr. 43), tried to keep up with the dusting in the house  (Tr. 36), and that he drove five minutes to the store as his "only chance to get out of the house."  (Tr. 49).  Plaintiff also testified that he could not carry a gallon of milk because of the pain, which is consistent with Dr. Richmond and Dr. Abdelaziz's opinions that he was unable to lift more than five pounds at a time.  (Tr. 24-25).

    The ALJ cannot mischaracterize Plaintiff's testimony in order to support her credibility determination.  *See White v. Comm'r of Soc. Sec., No. 08-1586*, 2009 U.S. App. LEXIS 4181, at *25 (6th Cir. Feb. 24, 2009).  Nor can she make credibility determinations on an "[her] intangible or intuitive notion about an individual's credibility."  *Rogers*, 486 F.3d at 247.  Given Plaintiff's justifications, and the medical opinions of three doctors that support his credibility, the ALJ's credible determination is unsupported by the record.

## D.

    Finally, Plaintiff argues that the ALJ relied on flawed VE testimony.  At the fifth step of the overall analysis "the [ALJ] must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational

25

profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).  The ALJ asked the VE whether "jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."  (Tr. 26).  However, "[i]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2011).

The VE's testimony was flawed because the ALJ's RFC assessment was improper, and therefore the hypothetical question did not accurately portray Plaintiff's impairments.  As previously noted, the ALJ failed to accord controlling weight to Plaintiff's treating physicians and failed to properly justify rejecting such opinions.  Because Plaintiff's testimony and the opinions of Plaintiff's treating physicians shape the RFC assessment, and the ALJ failed to properly consider this evidence, the RFC assessment did not accurately portray Plaintiff's impairments.  As such, the RFC was an improper basis upon which to formulate a hypothetical question to the VE.  Therefore, the ALJ's question failed to accurately portray Plaintiff's physical impairments as required.

### III.

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171,

174 (6th Cir. 1994). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary evidence to consider on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Id.* at 175. "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Culbertson v. Barhart*, 214 F. Supp. 2d 788, 795 (N.D. Ohio 2002) (*quoting Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551 (6th Cir. 1984)).

Based upon the foregoing, the Court concludes that remand is appropriate in this matter because there is insufficient evidence to support the ALJ's decision.

## IV

**IT IS THEREFORE ORDERED** that the decision of the Commissioner to deny Gregory Winningham benefits be and is **REVERSED**, and this matter be and is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner shall: (1) accord controlling weight to Drs. Richmond's and Abdelaziz's opinions, if they are not inconsistent with the entire record including the diagnosis and evidence of neuropathy, and if electing not to accord controlling weight, address with specificity the requirements of 20 C.F.R. §404.1527(d)(2); (2) reconsider Plaintiff's credibility in light of the entire record and by *balancing* the factors set forth in 20 CFR §404.1529; (3) reassess the RFC after properly considering the opinions of the treating physicians and Plaintiff's credibility; (4) make a finding as to

27

which hypothetical question the VE should have been asked; and (5) reconsider the VE's testimony in light of the revised hypothetical question.

**IT IS SO ORDERED.**

Date:    10/2/12                                          *s/ Timothy S. Black*
                                                         Timothy S. Black
                                                         United States District Judge